# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LI WEIXUM et. al.,

                Plaintiffs,              Civ. No. 04-0649 (RJL)

      v.

BO XILAI,

                Defendant.

## SUGGESTION OF IMMUNITY AND
## STATEMENT OF INTEREST OF THE UNITED STATES

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

JOSEPH H. HUNT
Director, Federal Programs Branch

VINCENT M. GARVEY
Deputy Director, Federal Programs Branch

ALEXANDER K. HAAS (CA Bar 220932)
Trial Attorney, U.S. Dep't of Justice
Civil Division, Federal Programs Br.
20 Massachusetts Ave., NW, Rm. 7328
Washington, D.C. 20530
Tel.  202-307-3937    Fax.  202-616-8470
alexander.haas@usdoj.gov
Attorneys for the United States of America

## TABLE OF CONTENTS

PAGE(S)

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.     Minister Bo Is Immune From The Court's Jurisdiction
           Because The Secretary Of State Has Determined That
           He Was In The United States On A Special Diplomatic
           Mission When Service Was Attempted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    II.    Foreign Policy Considerations Also Warrant Dismissal Of This Action . . . . . . 11

    III.   The Court Need Not, And Should Not, Address The FSIA Or
           Act Of State Doctrine In Resolving This Case . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

Abiola v. Abubakar, 267 F. Supp. 2d 907 (N.D. Ill. 2003) ........................................................... 7

Alicog v. Kingdom of Saudi Arabia,
    860 F. Supp. 379 (S.D. Tex. 1994) .................................................................................. 8

American Insurance Association v. Garamendi, 539 U.S. 396 (2003) ........................................ 12

Anonymous v. Anonymous, 581 N.Y.S.2d 776 (1st Dept 1992) .................................................. 8

Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398 (1964)......................................................10

Baker v. Carr, 369 U.S. 186 (1962) ..................................................................................... 15, 16

Burnham v. Super. Ct. of Cal., 495 U.S. 604 (1990) ................................................................. 14

Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103 (1948) ..................... 5

Chong Boon Kim v. Yim Yong Shik, Civ. No. 12565 (Cir. Ct. 1st Dir. Ha. 1963) ............... 8, 9

Chuidian v. Philippine Nat'l Bank, 912 F.2d 1095 (9th Cir.1990) ......................................... 7, 17

Doe v. Israel, 400 F. Supp. 2d 86 (D.D.C. 2005) .................................................................. 18, 19

Doe v. Qi, 349 F. Supp. 2d 1258 (N.D. Cal. 2004) ................................................................... 19

Estate of Domingo v. Marcos, 82-cv-1055 (W.D. Wash. July 14, 1983) ......................................8

El-Fadl v. Central Bank of Jordan, 75 F.3d 668 (D.C. Cir. 1996) ............................................. 18

Enahoro v. Abubakar, 408 F.3d 877 (7th Cir. 2005) ....................................................... 7, 15, 18

Ex parte Peru, 318 U.S. 578 (1943) ...........................................................................................6, 9

Filartiga v. Pena-Irala, 630 F.2d 876 (2d. Cir. 1980) .................................................................. 19

First American Corp. v. Al-Nahyan, 948 F. Supp. 1107 .......................................................... 7, 8

Gerritsen v. Hurtado, 85-cv-5020 (C.D. Cal. 1986) .....................................................................8

Guardian F. v. Archdiocese of San Antonio, Cause No. 93-CI-11345 (Tex. Dist. Ct. 1994) ....... 8

Hilao v. Marcos, 25 F.3d 1467 (9th Cir. 1994) ........................................................................ 19

In re Biaz, 135 U.S. 403 (1890) ........................................................................ 6

Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020 (D.C. Cir. 1997) ............ 7, 18

Kadic v. Karadzic, 70 F.3d 232 (2d Cir. 1996) ........................................................................ 19

Kilroy v. Charles Windsor, Prince of Wales, Civ. No. C-78-291 (N.D. Ohio 1978) ................... 8

Lafontant v. Aristide, 844 F. Supp. 128 (E.D.N.Y. 1994) ............................................................ 8

Leutwyler v. Office of Her Majesty Queen Rania Al- Abdullah,
        184 F. Supp. 2d 277 (S.D.N.Y. 2001) ........................................................................ 8

Michel v. I.N.S., 206 F.3d 253 (D.C. Cir. 2000) ........................................................................ 17

Naatex Consulting Corp. v. Watt, 722 F.2d 779 (D.C. Cir. 1983) ............................................. 14

People's Mojahedin Organization of Iran v. Department of State,
        182 F.3d 17 (D.C. Cir. 1999) ........................................................................ 17

Plaintiffs A, B, C v. Zemin, 282 F. Supp. 2d 875 (N.D. Il. 2003) ............................................... 9

Republic of Austria v. Altmann, 541 U.S. 677 (2004) ............................................................... 12

Republic of Mexico v. Hoffman, 324 U.S. 30 (1945) ................................................................. 6

Republic of the Philippines v. Marcos, 665 F. Supp. 793 (N.D. Cal. 1987) ...................... 8, 9, 11

Rose v. Silver, 394 A.2d 1368 (D.C. 1978) ............................................................................... 14

Saltany v. Reagan, 702 F. Supp. 319 (D.D.C. 1988) ................................................................ 8

Schwartz v. Thomas, 222 F.2d 305 (D.C. Cir. 1955) ................................................................ 13

Sosa v. Alvarez Machain, 542 U.S. 692 (2004) ............................................................. 12, 14, 15

Spacil v. Crowe, 489 F.2d 614 (5th Cir. 1974) ................................................................. 6, 9, 10

Tachiona v. Mugabe, 234 F.Supp.2d 401 (S.D.N.Y. 2004) ....................................................... 9

Tachiona v. United States, 386 F.3d 205 (2d Cir. 2004) ........................................................... 16

The Schooner Exchange v. McFaddon, 11 U.S. 116 (1812) .................................................. 4-5

Trajano v. Marcos, 978 F.2d 493 (9th Cir. 1992) ........................................................ 19

United States v. Benner, 24 F. Cas. 1084 (C.C.E.D. Penn. 1830) ........................... 5, 16

United States v Lee, 106 U.S. 196 (1882) ................................................................ 9

United States v. Wong Kim Ark., 169 U.S. 649 (1898) ............................................. 5

Velasco v. Indonesia, 370 F.3d 392 (4th Cir. 2004) ................................................ 18

Xuncax v. Gramajo, 886 F. Supp. 162 (D. Mass. 1995) .......................................... 19

Ye v. Zemin, 383 F.3d 620 (7th Cir. 2004) ........................................................... 7, 18

Youpe v. Strasser, 113 F. Supp. 289 (D.D.C. 1953) ...............................................14

## STATUTES

28 U.S.C. § 517 ....................................................................................................... 1

28 U.S.C. §1350 ...................................................................................................... 2

28 U.S.C. § 1350 note ............................................................................................. 2

28 U.S.C. § 1602 ..................................................................................................... 7

## LEGISLATIVE MATERIALS

H.R. Rep. No. 1487, 94th Cong., 2d Sess. 12 (1976), reprinted in
1976 U.S.C.C.A.N. 6604, 6610 ............................................................................... 7

S. Rep. No. 102-249, at 8 ........................................................................................ 19

## OTHER MATERIALS

7 Op. Atty. Gen. 186 (1855) ....................................................................................16

Case Concerning the Arrest Warrant of 11 April 2000
(Democratic Republic of The Congo v. Belgium) ......................................................10

Decision of February 27, 1984, (Tabatabai) Case No. 4 StR 396/83, 80 ILR 388 (1989) ...........10

Re Bo Xilai, Bow Street Magistrates Court (unreported decision), November 8, 2005 .........10-11

Restatement (Third) of Foreign Relations, § 464 ...............................................11, 13

**SUGGESTION OF IMMUNITY AND**
**STATEMENT OF INTEREST OF THE UNITED STATES**

**INTRODUCTION**

Plaintiffs, practitioners of the Falun Gong spiritual movement in the People's Republic of

China ("China" or "PRC"), have brought this lawsuit against the sitting Minister of Commerce

of the PRC, Bo Xilai ("Minister Bo"), for actions he allegedly took in furtherance of China's

policy of suppressing the Falun Gong while serving in a previous government position.  By letter

dated February 28, 2006, this Court solicited the views of the Department of State with respect to

several issues raised by this case.  See Letter from the Court to State Department Legal Adviser

John B. Bellinger, III (the "Legal Adviser"), of Feb. 28, 2006 ("Court's Letter").  Pursuant to 28

U.S.C. § 517,[1] the United States of America submits this Suggestion of Immunity and Statement

of Interest to inform the Court that the Department of State has recognized and allowed Minister

Bo's immunity from the Court's jurisdiction, based on his immunity from service for the

duration of his special diplomatic mission, and therefore to urge dismissal on that basis, briefly

addressing, as well, the questions raised in the Court's Letter.

Without reference to the specific allegations in this suit, the United States has informed

China, both publicly and privately, of its strong opposition to violations of the basic human

rights of Falun Gong practitioners in China.  Furthermore, the United States has repeatedly called

on China to respect the rights of all its citizens, including Falun Gong adherents.  The United

States' critical views of China's treatment of Falun Gong practitioners are a matter of public

---

[1]   Section 517 provides that the "Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."  28 U.S.C. § 517.

record.  See, e.g., Department of State Annual Human Rights Report for 2005, available at www.state.gov/g/drl/rls/hrrpt/2005/61605.htm (especially pages 22-23).

## BACKGROUND

Plaintiffs have brought this suit against Minister Bo for actions he allegedly performed during his tenure as Governor of China's Liao Ning Province from 2001 to 2004.  Minister Bo is now, as he was when plaintiffs purportedly served him with process, China's Minister of Commerce, a cabinet-level position with responsibility for China's relations with foreign states on commercial and international trade matters.  Plaintiffs assert that this Court has jurisdiction under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, and the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350 note.

On April 22, 2004, plaintiffs purported to serve by hand a summons and complaint upon Minister Bo while he was in Washington, D.C., on a special diplomatic mission.  Minister Bo had traveled to the United States pursuant to an invitation of the Executive Branch to participate in an annual meeting of the U.S.-China Joint Commission on Commerce and Trade ("JCCT").  Minister Bo was, at that time, a member of Vice Premier Wu Yi's official diplomatic delegation.  The purported service was made in the midst of a U.S.-PRC Business Council reception honoring Chinese Vice Premier Wu Yi and her delegation.  See Letter from the Legal Adviser to Assistant Attorney General, Civil Division, Peter D. Keisler, dated July 24, 2006 ("Bellinger Letter") at 2, attached hereto as Attachment 1, and its Enclosure B.

Plaintiffs allege that Minister Bo, while governor of Liao Ning Province, was responsible for their being the victims of "torture, genocide, extrajudicial killing, arbitrary detention, and denial of the rights to freely exercise religious and spiritual beliefs, to speak freely, to associate, to assemble peacefully, and to express one's views freely"  because of their adherence to Falun

- 2 -

Gong.  See Compl. ¶ 1.  Plaintiffs' allegations center on Minister Bo's supervision of Chinese

government personnel in Liao Ning Province who allegedly engaged in these abuses.  Plaintiffs

do not allege that Minister Bo personally abused anyone.  See, e.g., Compl. ¶ 16 (stating that as

"Governor he exercised general and complete supervisory power and authority over all

governmental policies and practices for Liao Ning Province").  Instead, their complaint focuses

on "the policies and actions of the Defendant and other high-level government officials."  Id. ¶ 7.

Plaintiffs invoke the ATS and the TVPA as the basis for a direct challenge to the Chinese

Government's Falun Gong policies towards its own citizens in U.S. courts.  See, e.g., id. ¶ 8

(referring to Chinese Government's Falun Gong "policies and practices").  Plaintiffs demand

declaratory, compensatory, and punitive relief, as well as a jury trial.  Id. ¶ 39.

      The Clerk of the District Court entered a default against Minister Bo on July 28, 2004.

On September 27, 2005, however, the Court denied Plaintiffs' motion for declaratory and default

judgments.  In its letter of February 28, 2006, the Court asked the Department of State for its

views on three related questions:

> 1.    What effect, if any, will adjudication of this suit have on the
>     foreign policy of the United States, specifically with the PRC?
>
> 2.    What is the Department of State's position on the applicability of
>     the Act of State Doctrine in this action?
>
> 3.    If the Court finds that the case is justiciable, what is the
>     Department of State's position on the application of the Foreign
>     Sovereign Immunities Act ("FSIA") in this action?

      Having determined that Minister Bo is immune from the Court's jurisdiction because he

was not subject to service of process due to his special mission immunity, see Bellinger Letter at

2-3, and in light of the significant foreign policy concerns at stake in the adjudication of this

case, the United States submits this Suggestion of Immunity and Statement of Interest and asks

that the action against Minister Bo be dismissed.

## ARGUMENT

**I.      Minister Bo Is Immune Because The Department Of State Has Determined That He Was On A Special Diplomatic Mission When Service Was Attempted.**

The United States files this Suggestion of Immunity in response to the Court's letter to

advise the Court that the Department of State has determined that Minister Bo is entitled to

immunity for the duration of his visit and that this determination cloaks Minister Bo with

immunity from service, which removes him from the Court's jurisdiction.  The Department of

State has concluded that during the course of his official visit as part of the PRC's formal

delegation, Minister Bo functioned as an official diplomatic envoy of the PRC.  The Department

of Justice has been informed by the Legal Adviser that the Department of State considers the

visit of Minister Bo in April 2004 to have been a special diplomatic mission to the United States

that rendered Minister Bo immune from service of process.  See Bellinger Letter at 2-3.

From the earliest days of the Republic, the United States has recognized that senior

foreign officials invited to the United States are entitled to certain fundamental legal protections

that permit them to carry out their official functions.  In the words of the Supreme Court,

> A sovereign committing the interests of his nation with a foreign power,
> to the care of a person whom he has selected for that purpose, cannot
> intend to subject his minister in any degree to that power; and, therefore,
> a consent to receive him, implies a consent that he shall possess those
> privileges which his principal intended he should retain – privileges
> which are essential to the dignity of his sovereign, and to the duties he is
> bound to perform.

The Schooner Exchange v. McFaddon, 11 U.S. 116, 139 (1812).  This principle is not only

consistent with rules of customary international law recognized and applied in the United States

but also with the President's constitutional powers over foreign affairs. [2] In addition, Article II, Section 3 of the Constitution, which expressly grants the President the authority to "receive Ambassadors and other public Ministers,"[3] provides the Executive Branch with the authority to define the terms for receiving foreign emissaries. See United States v. Benner, 24 F. Cas. 1084, 1086 (C.C.E.D. Penn. 1830) ("the power of receiving ambassadors and other public ministers . . . is plenary and supreme, with which no other department of the government can interfere . . . . In the reception of ambassadors and ministers, the president is the government, he judges of the mode of reception, and by the act of reception, the person so received, becomes at once clothed with all the immunities which the law of nations and the United States, attach to the diplomatic character"). Therefore, upon an Executive Branch determination, senior foreign officials on special diplomatic missions are immune from personal jurisdiction where jurisdiction is based solely on their presence in the United States during their mission. In the present case, the Legal Adviser has informed the Department of Justice that "the Department of State recognizes and allows the immunity of Minister Bo Xilai from the jurisdiction of the United States District

---

[2]  The Supreme Court has also expressly recognized – for purposes of the conferral of citizenship on children born in the United States – that ministers of foreign sovereigns are not subject to the jurisdiction of the United States. United States v. Wong Kim Ark, 169 U.S. 649, 693 (1898) ("[t]he Fourteenth Amendment affirms the ancient and fundamental rule of citizenship by birth within the territory, in the allegiance and under the protection of the country, including all children here born of resident aliens, with the exceptions or qualifications (as old as the rule itself) of children of foreign sovereigns *or their ministers*, or born on foreign public ships, or of enemies within and during a hostile occupation of part of our territory . . . .") (emphasis added).

[3]  More broadly, Article II, Section 2 provides that the President "shall have Power, by and with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators present concur." These provisions, along with others vesting the "executive Power" in the President and requiring the President to "take Care that the Laws be faithfully executed," see U.S. Const. art. II, §§ 1, 3, confer on the President the authority to conduct foreign affairs. See generally Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 109 (1948) ("The President also possesses in his own right certain powers conferred by the Constitution on him as Commander-in-Chief and as the Nation's organ in foreign affairs.").

Court, including from service of process, during the period of his visit to the United States." See Bellinger Letter at 2. For this reason, the purported service of process on Minister Bo during his presence in the United States on a special diplomatic mission should be deemed a nullity, and the case should be dismissed for lack of jurisdiction over Minister Bo.

Consistent with the Constitution's allocation of primary responsibility for foreign affairs to the Executive Branch, Supreme Court precedent clearly establishes that U.S. courts are bound by suggestions of immunity, such as this one, submitted by the Executive Branch. See Republic of Mexico v. Hoffman, 324 U.S. 30, 35-36 (1945); Ex parte Peru, 318 U.S. 578, 588-89 (1943). In Ex parte Peru, the Supreme Court declared that the Executive Branch's suggestion of immunity "must be accepted by the courts as a conclusive determination by the political arm of the Government" that the courts' retention of jurisdiction would jeopardize the conduct of foreign relations. Ex parte Peru, 318 U.S. at 589. See also Spacil v. Crowe, 489 F.2d 614, 617 (5th Cir. 1974) ("[O]nce the State Department has concluded that immunity is warranted, and has submitted that ruling to the court through a suggestion, the matter is for diplomatic rather than judicial resolution"); In re Baiz, 135 U.S. 403, 432 (1890) (in the foreign minister context, suggesting that a court must accept a certification of the Department of State that a person is the foreign minister and entitled to immunity). Accordingly, where, as here, the Executive Branch has recognized the immunity of a high-level foreign official on a special diplomatic mission and the Executive Branch has filed a suggestion of immunity, it is the "court's duty" to surrender jurisdiction. Ex parte Peru, 318 U.S. at 588; see also Hoffman, 324 U.S. at 35.

The courts of the United States have consistently heeded the Supreme Court's direction regarding the binding nature of suggestions of immunity submitted by the Executive Branch. Prior to 1977, when the Foreign Sovereign Immunities Act ("FSIA") was enacted, such

suggestions were made primarily on behalf of foreign <u>states</u>; because FSIA comprehensively regulates the immunity of foreign states,[4] suggestions have since been made primarily on behalf of foreign heads of state, and in some cases other officials.[5]  The obligation to heed Executive

---

[4] The FSIA codified the "restrictive" approach to sovereign immunity, under which sovereigns are immune from jurisdiction except for their private acts, <u>see</u> 28 U.S.C. §§ 1330 & 1602 <u>et seq.</u>, and transferred the role of determining the immunity of foreign *states* in light of this exception from the Executive Branch to the courts.  <u>See</u> H.R. Rep. No. 1487, 94th Cong., 2d Sess. 12 (1976), <u>reprinted in</u> 1976 U.S.C.C.A.N. 6604, 6610.  But the FSIA's passage did not alter the conclusive effect of the Executive Branch's Suggestion of Immunity in this case, in part, because the President's power is constitutionally based.  Moreover, even if the FSIA also provides immunities to foreign officials when the sovereign would be immune, as this and other courts of appeals have held – see <u>Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan</u>, 115 F.3d 1020, 1028 (D.C. Cir. 1997); <u>Chuidian v. Philippine Nat'l Bank</u>, 912 F.2d 1095, 1103, 1106-07 (9th Cir. 1990); <u>but see</u> <u>Enahoro v. Abubakar</u>,  408 F.3d 877 (7th Cir. 2005) – there is no reason to conclude that it alters Executive Branch authority to suggest immunity for senior foreign government officials on non-statutory grounds or affects the binding nature of such suggestions. <u>See, e.g.</u>, <u>Ye v. Zemin</u>, 383 F.3d 620, 625 (7th Cir. 2004) ("Because the FSIA does not apply to heads of states, the decision concerning the immunity of foreign heads of states remains vested where it was prior to 1976 – with the Executive Branch."); <u>Abiola v. Abubakar</u>, 267 F. Supp. 2d 907, 915-16 (N.D. Ill. 2003), <u>aff'd sub nom.</u> <u>Enahoro</u>, 408 F.3d 877; <u>First American Corp. v. Al-Nahyan</u>, 948 F. Supp. 1107, 1119 (D.D.C. 1996) ("the enactment of the FSIA was not intended to affect the power of the State Department, on behalf of the President as Chief Executive, to assert immunity for heads of state <u>or for diplomatic and consular personnel</u>" (emphasis added)).  At a minimum, the application of FSIA immunities is in addition to functional immunities, like head of state, diplomatic or special mission immunity.

[5] Indeed, the head of state cases unanimously recognize that suggestions of immunity are conclusive in those cases.  <u>See, e.g.</u>, in addition to <u>Saltany v. Reagan</u>, 702 F. Supp. 319, 320 (D.D.C. 1988) (suggestion of Prime Minister Thatcher's immunity conclusive in dismissing suit that alleged British complicity in U.S. air strikes against Libya), <u>aff'd in part and rev'd in part on other grounds</u>, 886 F.2d 438 (D.C. Cir. 1989), <u>see, e.g.</u>, <u>Alicog v. Kingdom of Saudi Arabia</u>, 860

Branch suggestions also applies, however, to special diplomatic missions. <u>See</u> <u>Kilroy v. Charles</u> <u>Windsor, Prince of Wales</u>, Civ. No. C-78-291 (N.D. Ohio, 1978) (Prince of Wales), <u>see</u> Attachments 2 (decision) and 3 (United States' suggestion), attached hereto; <u>Chong Boon Kim v.</u> <u>Yim Yong Shik</u>, Civ. No. 12565 (Cir. Ct. 1st Dir. Haw. 1963), <u>cited at</u> 58 AM J. Int'l Law 165, 186-87 (1964) (Philippine Solicitor General), <u>see</u> Attachment 4, hereto; <u>see also</u> <u>Republic of the</u> <u>Philippines v. Marcos</u>, 665 F. Supp. 793 (N.D. Cal. 1987) (court granted Philippine Solicitor General diplomatic immunity, misunderstanding U.S. position that he was entitled to special missions immunity).  While suits against ministerial level foreign officials initiated through service while the minister is in the United States on official business have been exceedingly rare, the United States has submitted suggestions of immunity in previous cases involving efforts to initiate suits by attempting to physically serve foreign heads of state or senior foreign representatives while they were in the United States temporarily on official visits.  <u>See, e.g.,</u>

---

F. Supp. 379, 382 (S.D. Tex. 1994) (suggestion by Executive Branch of King Fahd's immunity as head of state of Saudi Arabia held to require dismissal of complaint against King Fahd for false imprisonment and abuse); <u>Guardian F. v. Archdiocese of San Antonio</u>, slip op., Cause No. 93-CI-11345 (Tex. Dist. Ct. 1994) (suggestion of immunity required dismissal of suit against Pope John Paul II); <u>Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah</u>, 184 F. Supp. 2d 277, 280 (S.D.N.Y. 2001) (Executive Branch's Suggestion of Immunity on behalf of Queen of Jordan "is entitled to conclusive deference from the courts"); <u>First American Corp.</u>, 948 F. Supp. at 1119 (suggestion by Executive Branch of the United Arab Emirates' Sheikh Zayed's immunity determined conclusive and required dismissal of claims alleging fraud, conspiracy, and breach of fiduciary duty); <u>Lafontant v. Aristide</u>, 844 F. Supp. 128, 132 (E.D.N.Y. 1994) (suggestion by Executive Branch of Haitian President Aristide's immunity held binding on court and required dismissal of case alleging President Aristide ordered murder of plaintiff's husband); <u>Gerritsen v.</u> <u>Hurtado</u>, 85-cv-5020, slip op. at 7-9 (C.D. Cal. 1986), attached as Attachment 5 (suit against Mexican President De la Madrid and others for conspiracy to deprive plaintiff of constitutional rights dismissed as against President De la Madrid pursuant to suggestion of immunity); <u>Estate</u> <u>of Domingo v. Marcos</u>, 82-cv-1055, slip op. at 2-4 (W.D. Wash. July 14, 1983), attached as Attachment 6 (action alleging political conspiracy by, among others, then-president Ferdinand Marcos and then-First Lady Imelda Marcos of the Republic of the Philippines dismissed against them pursuant to suggestion of immunity); <u>Anonymous v. Anonymous</u>, 581 N.Y.S.2d 776, 777 (1st Dep't 1992) (divorce suit against head of state dismissed pursuant to suggestion of immunity).  The immunity suggested here is consistent with head of state immunity.

Tachiona v. Mugabe, 234 F. Supp. 2d 401 (S.D.N.Y. 2004) (head of state and foreign minister),

aff'd on other grounds 386 F.3d 205 (2d Cir. 2004); Plaintiffs A, B, C v. Zemin, 282 F. Supp. 2d

875 (N.D. Il. 2003) (head of state); Chong Boon Kim, Civ. No. 12565 (Cir. Ct. 1st Dir. Haw.

1963), Attachment 4, (special mission by foreign minister where he had been allegedly served

while in the United States). The United States also submitted a suggestion of special mission

immunity when the Philippine Solicitor General was given a subpoena for purposes of discovery

in on-going litigation. See Republic of the Philippines, 665 F. Supp. at 793. Here, the

determination of this immunity rendered Minister Bo immune from service of process for the

duration of the special diplomatic mission, which renders the service in this action a legal nullity.

Judicial deference to the Executive Branch's suggestions of immunity advances important

constitutional principles. As the Fifth Circuit explained in Spacil, "[s]eparation-of-powers

principles impel a reluctance in the judiciary to interfere with or embarrass the executive in its

constitutional role as the nation's primary organ of international policy." 489 F.2d at 619 (citing

United States v. Lee, 106 U.S. 196, 209 (1882)); see also Ex parte Peru, 318 U.S. at 588. The

Executive Branch possesses substantial institutional resources to pursue and extensive

experience to conduct the country's foreign affairs. See Spacil, 489 U.S. at 619. By comparison,

"the judiciary is particularly ill-equipped to second-guess" the Executive Branch's determinations

affecting the country's interests. Id. And, "[p]erhaps most importantly, in the chess game that is

diplomacy only the executive has a view of the entire board and an understanding of the

relationship between isolated moves." Id.

These considerations are well evidenced in the case at hand. As explained further below,

the Executive Branch's ability to conduct foreign affairs would be seriously undermined were

this lawsuit not dismissed. See infra at Part II. In addition, the authority to suggest special

mission immunity allows the Executive Branch to respect and contribute to customary

international law, while avoiding the prospect of objections by other states.[6]  Other states have

recognized special mission immunity and its foundation in international law.[7]  The full extent of

that immunity may remain unsettled, but need not be decided here in any event.  Minister Bo's

case falls well within the widespread consensus that, at a minimum, States are constrained in

their ability to exercise jurisdiction, as here, over ministerial-level officials invited on a special

diplomatic mission.  It is notable that a British court recently recognized Minister Bo's special

mission immunity in refusing to issue a criminal arrest warrant against him in the United

Kingdom.  See Re Bo Xilai, Bow Street Magistrates Court (unreported decision), November 8,

---

[6]  Cf. Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 432-33 (1964) ("When articulating principles of international law in its relations with other states, the Executive Branch speaks not only as an interpreter of generally accepted and traditional rules, as would the courts, but also as an advocate of standards it believes desirable for the community of nations and protective of national concerns.").

[7]  In 1984, for instance, the Criminal Chamber of the German Federal Supreme Court opined that "irrespective of the [UN Special Missions Convention], there is a customary rule of international law based on State practice and opinio juris which makes it possible for an ad hoc envoy, who has been charged with a special political mission by the sending State, to be granted immunity by individual agreement with the host State for that mission and its associated status, and therefore for such envoys to be placed on a par with the members of the permanent missions of State protected by international treaty law."  Decision of February 27, 1984, (Tabatabai) Case No. 4 StR 396/83, 80 ILR 388 (1989).  The applicability of this principle has also been recognized even with respect to the gravest allegations.  For example, the Belgian Government, which asserted (unsuccessfully) the right to issue a warrant for the arrest of the foreign minister of the Democratic Republic of the Congo, emphasized to the International Court of Justice, without limitation to foreign ministers, that it was not claiming a right to enforce such warrants against "representatives of foreign States who visit Belgium on the basis of an official invitation."  See Case Concerning the Arrest Warrant of 11 April 2000 (Democratic Republic of The Congo v. Belgium), Counter Memorial of the Kingdom of Belgium, September 28, 2001, para. 1.212, available at http://www.icj-cij.org/icjwww/idocket/iCOBE/icobepleadings/icobe_ipleading_countermemorial_belgium_20010928.pdf.  See also id. Judgment of February 14, 2002, http://www.icj-cij.org/icjwww/idocket/iCOBE/iCOBEframe.htm.

2005, attached hereto at Attachment 7.[8]  See Restatement (Third) of Foreign Relations Law of the United States, § 464, cmt. i ("High officials of a foreign state and their staffs on an official visit or in transit . . . enjoy immunities like those of diplomatic agents when the effect of exercising jurisdiction against the official would be to violate the immunity of the foreign state.").[9]  In the few earlier U.S. cases presenting comparable circumstances, foreign governments have objected vigorously, and the United States has in fact suggested immunity. See, e.g., Republic of Philippines, 655 F. Supp. at 793.

Guided by these precedents, the Court should accept the United States' Suggestion of Immunity for Minister Bo, conclude that for the duration of the special diplomatic mission that Minister Bo was immune from service of process, and dismiss the case against him for lack of jurisdiction.

## II.    Foreign Policy Considerations Also Warrant Dismissal Of This Action.

The United States' Suggestion of Immunity, based upon the Department of State's determination, makes it unnecessary for the Court to reach the questions posed in its letter.  Even if the United States' Suggestion of Immunity did not compel dismissal, however, the United States would urge the Court to dismiss this lawsuit given the Department of State's concern in avoiding significant tensions in U.S. relations with China as well as judicial intrusion into

---

[8]   The decision of the Bow Street Magistrates Court has not been officially reported, but the United States understands that it will be reported in this form in October 2006, in an upcoming edition of the International Law Reports.  See Cambridge University Press Website, http://www.cup.cam.ac.uk/us/catalogue/catalogue.asp?isbn=052186769X (item 23 in compilation).  The editors of the ILR provided this copy of the opinion to the Department of State in advance of the publication.

[9]   Special mission immunity would not, however, encompass all foreign official travel.  For example, no personal immunity is extended to persons based on their mere assignment to temporary duty at a foreign mission for a brief period of time.  See, e.g., Department of State circular diplomatic note, dated May 1, 1985, published in M. Nash, Cumulative Digest of United States Practice in International Law 1981-1988, 905, 907 (1993).

matters constitutionally committed to the Executive Branch. Given the reasonable expectations of foreign governments sending ministerial-level representatives to the United States on special missions, permitting personal jurisdiction over Minister Bo solely on the basis of service of process during his official visit would seriously damage U.S. foreign policy interests. Indeed, as shown below and reflected in the Bellinger Letter, the circumstances of service in this suit already have caused considerable foreign policy tension. See Bellinger Letter at 3-4, and Enclosures B-D thereto. That tension has been aggravated by the nature of this case, which challenges the official policies of the PRC with respect to the Falun Gong. Id. at 4. The suit has interfered with the President's ability to conduct foreign relations with China and will likely continue to do so. Thus, even if dismissal were not required by the Suggestion of Immunity, it would be warranted by deference to the Executive Branch's unique and exclusive role in receiving diplomatic officials and conducting diplomatic relations.

The Supreme Court has instructed that when "the State Department choose[s] to express its opinion on the implications of exercising jurisdiction" over particular entities, that opinion concerning the foreign policy implications of a case is entitled to deference. Republic of Austria v. Altmann, 541 U.S. 677, 702 (2004); see also Sosa v. Alvarez Machain, 542 U.S. 692, 733 & n.21 (2004) (noting that "case-specific deference to the political branches" might be appropriate based on the Executive Branch's view of the United States' foreign policy interests). These instructions rest on the Court's recognition of the President's "vast share of responsibility for the conduct of our foreign relations," American Insurance Association v. Garamendi, 539 U.S. 396, 414 (2003), and the need for courts to decline jurisdiction in cases that might significantly interfere with his carrying out that responsibility. Central to the foreign policy problems caused by this case is the fact that Minister Bo, a cabinet officer, was purportedly served while in the

- 12 -

United States on official business.  Foreign governments expect their officials to be able to travel on official business free from service of civil process.  See Restatement (Third) of Foreign Relations Law of the United States, § 464, cmt. i.  As the Bellinger Letter explains, the "United States must be able to host foreign officials without the prospect that they may be served with process in a civil suit" because "[d]iplomatic relations often turn on the ability of officials from different states to communicate and meet with each other without harassment or distraction." Bellinger Letter at 3.

The prospect that senior foreign officials who are in the United States for government-to-government business may be served with process in a civil suit poses a severe impediment to the conduct of foreign relations.  Its effect is to deprive the President of an essential foreign policy tool – the ability to host meetings without fear of harassment or, ultimately, to host meetings at all.  The Department of State understands that the Chinese Legal Adviser has recommended that Minister Bo not travel to the United States unless his immunities from jurisdiction will be respected.  Id. at 3.  The Department of State's concerns also extend to the potential for reciprocal treatment of U.S. officials by foreign courts, because "[p]ermitting this suit against Minister Bo would be inconsistent with our representations to other governments, and could expose U.S. officials visiting other countries to suits arising from their performance of official U.S. government functions."  Id.

Adjudication of this case is particularly problematic because plaintiffs would have the Court exercise personal jurisdiction based solely on Minister Bo's mere transitory presence in the United States.  It would be highly offensive to a foreign sovereign to assert jurisdiction based on such an attenuated link to the United States.  As the Bellinger Letter states, "The United States must be able to host foreign officials without the prospect that they may be served with

process in a civil suit." Id. Just as the courts of this Circuit will not allow jurisdiction to be

established with regard to a person who enters the District of Columbia to deal with the federal

government, they should not recognize it when a foreign official is present in the United States

dealing with the Executive Branch.[10]

Apart from the manner of service, this case has caused friction between the United States

and China because Plaintiffs seek to have this Court pass judgment on Chinese government

policies. Bellinger Letter at 3-4. In Sosa, the Supreme Court recognized that the potential for

adverse foreign policy effects will be especially great where U.S. courts are asked to sit in

judgment of the conduct of foreign officials abroad. 542 U.S. at 733, n.21. "It is one thing for

American courts to enforce constitutional limits on our own State and Federal Governments'

power, but quite another to consider suits under rules that would go so far as to claim a limit on

the power of foreign governments over their own citizens, and to hold that a foreign government

or its agent has transgressed those limits." Id. at 727.

This suit manifestly concerns actions allegedly taken against Chinese nationals and

residents by Chinese officials carrying out Chinese government policies in China. As the

Bellinger Letter states, "[a] review of the complaint in this case makes clear its ambition to

challenge not only acts attributed to Minister Bo, but also the Chinese Government's anti-[Falun

Gong] policy in general." Bellinger Letter at 3. Indeed, according to the Complaint, Minister

---

[10] While physical presence within a jurisdiction ordinarily renders a person amenable to service
of process, see Burnham v. Super. Ct. of Cal., 495 U.S. 604 (1990) (plurality), courts have
recognized exceptions. For example, "mere entry [into the District of Columbia] by non-
residents for the purpose of contacting federal government agencies cannot serve as a basis for in
personam jurisdiction" under the District of Columbia's long-arm statute. See Rose v. Silver,
394 A.2d 1368, 1370 (D.C. 1978). See also Naatex Consulting Corp. v. Watt, 722 F.2d 779,
785-87 (D.C. Cir. 1983). Similarly, recognizing the need to respect the functions of the
coordinate branches, courts have considered non-resident witnesses before bodies of the
Executive Branch or Congress immune from service of process. See Youpe v. Strasser, 113 F.
Supp. 289 (D.D.C. 1953).

Bo's actions were taken "in concert with other officials at the highest levels of the national government of the People's Republic of China (PRC) and its ruling Central-Committee of the Chinese Communist Party." Compl., ¶ 1. The Complaint describes these actions as part of the PRC government's "national policy and campaign to seek the termination of the spiritual practices of the Falun Gong movement." Id. ¶ 18. It states that they are "part of the effort to subvert and prevent social and political dissent," and alleges that "[t]his campaign of persecution ... was initiated at the highest levels of the Communist Party and Government, with the President, Jiang Zemin, issuing the initial order that banned the spiritual movement, declared it and its practitioners unlawful, and began the persecution through the establishment of the Falun Gong Control Office." Id.

Indeed, the PRC has protested the continued adjudication of this suit in very strong terms. See generally Diplomatic Correspondence attached to Bellinger Letter at Enclosures B-D. Most recently, in a letter to Attorney General Gonzales concerning this case, PRC Minister of Justice Wu Aiying has stated: "The US side should be fully aware that China-US relations, especially the economic and trade ties as well as cooperation between the relevant government departments and exchange of visits, will be adversely affected ...." See Aiying Letter, attached hereto as Attachment 8, at 1. It is clear that adjudication of this suit will cause significant friction in U.S. relations with China. This, in turn, will interfere with Executive Branch efforts to work with China on a range of issues important to United States interests, including efforts aimed at improving the treatment of the Falun Gong in China.

Permitting this case to go forward would also offend core constitutional principles underlying the political question doctrine as expounded by the Supreme Court in Baker v. Carr, 369 U.S. 186, 217 (1962). While the Supreme Court has cautioned that not "every case or

controversy which touches foreign relations lies beyond judicial cognizance," id. at 211, adjudication of this case implicates several of the Baker factors. Adjudication would show a "lack of the respect due coordinate branches of government," require the Court to interfere in areas as to which there is a "textually demonstrable constitutional commitment of the issue to a coordinate political department" and an adherence to a political decision already made, id. at 217, – namely, the decision to invite Minister Bo to the United States for official talks. Adjudication of this case, moreover, would create the potential of embarrassment from conflicting pronouncements by various departments on one question. Id. The decision to invite Minister Bo to the United States for official talks was a quintessential foreign policy decision of the sort constitutionally reserved to the Executive Branch. Article II, Section 3 of the Constitution assigns to the President the authority to "receive Ambassadors and other public Ministers."[11] "Courts have long construed this executive authority to encompass a near-exclusive power to dictate the terms upon which foreign diplomats are received in this country." Tachiona v. United States, 386 F.3d 205, 213 (2d Cir. 2004) (citing cases); see also Benner, 24 F. Cas. at 1086.

The Executive's decision to invite Minister Bo to the United States carried with it the expectation that Minister Bo would not be subject to service of process for civil suit. For the Court to adjudicate this case would contravene a foreign policy decision taken by the Executive, interfere with the exclusive authority of the President to receive foreign public ministers, offer the prospect of inconsistent pronouncements in a sensitive foreign relations context and, as discussed above, continue to place undesirable stress upon U.S. relations with China.

---

[11]  Minister Bo would fall within the terms of this constitutional provision. See 7 Op. Atty. Gen. 186, 204 (1855) ("Ambassadors and other Public Ministers" includes "all possible diplomatic agents which any foreign power may accredit to the United States" and "all officers having diplomatic functions whatever their title or designation.").

Because of these adverse effects, as well as the circumstances in which this suit was initiated, the Executive Branch's considered judgment is that exercising jurisdiction over Minister Bo to adjudicate these claims against Chinese policy and practices would be contrary to the foreign policy interests of the United States. Such Executive Branch foreign policy decisions are not subject, and must not be subjected, to judicial second-guessing. See People's Mojahedin Organization of Iran v. Department of State, 182 F.3d 17, 23 (D.C. Cir. 1999) (noting that it "is beyond the judicial function for a court to review foreign policy decisions of the Executive Branch"). Thus, even if the United States had not filed a Suggestion of Immunity for Minister Bo, it would be appropriate for the Court to defer to the foreign policy views of the Executive Branch and to dismiss the suit pursuant to the Supreme Court's guidance in Sosa and Baker.

## III. The Court Need Not, And Should Not, Address The FSIA Or Act Of State Doctrine In Resolving This Case.

Given that this case can and should be dismissed pursuant to the Suggestion of Immunity – and, in any event, on foreign policy grounds – the FSIA and act of state issues raised in the Court's Letter need not be addressed. Both issues pose difficult and sensitive questions that need not be confronted at this time in the present circumstances of this case. See Michel v. I.N.S., 206 F.3d 253, 260 n.4 (D.C. Cir. 2000) ("[w]here … no harm results from our failing to answer a question, … the doctrine of judicial restraint provides a fully adequate justification for deciding [the] case on the best and narrowest ground available.") (citation and internal marks omitted).

Under the law of this Circuit, Minister Bo could well be viewed as an "agent" or "instrumentality" of China under the FSIA. This approach finds its origin in Chuidian v. Philippine National Bank, 912 F.2d 1095 (9th Cir. 1990), in which the Ninth Circuit acknowledged that the FSIA did not specifically address individuals but noted that "[i]t is

- 17 -

generally recognized that a suit against an individual acting in his official capacity is the practical equivalent of a suit against the sovereign directly." Id. The Chuidian rule has since been adopted in this Circuit, Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1028 (D.C. Cir. 1997); El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996), as it has been in others, e.g., Velasco v. Indonesia, 370 F.3d 392, 398 (4th Cir. 2004) ("courts have construed foreign sovereign immunity to extend to an individual acting in his official capacity on behalf of a foreign state."). See also Doe v. Israel, 400 F. Supp. 2d 86, 104 (D.D.C. 2005).[12]

Thus, the FSIA, like the act of state doctrine, would require a difficult and diplomatically undesirable inquiry into whether Minister Bo was "acting in his official capacity on behalf of a foreign state." Although the gravamen of the complaint is a challenge to the official policy of the Chinese government in banning the Falun Gong, the Court might need to inquire into such sensitive subjects as whether the Chinese government authorized or ratified the specific alleged acts of Minister Bo, which include responsibility for alleged torture and extrajudicial killing, or whether such alleged acts may be properly characterized as official acts for FSIA and act of state purposes. One recent decision took a broad view of the applicability of the FSIA (and the act of state doctrine) in a suit challenging purportedly ultra vires acts of Israeli officials in the West Bank and Gaza, see Doe, 400 F. Supp. 2d at 104 (explaining that FSIA immunity is exceeded "only where the 'suits against officers in their personal capacities [] pertain to private action -- that is, to actions that exceed the scope of authority vested in that official so that the official cannot be said to have acted on behalf of the state.'") (citing El-Fadl, 75 F.3d at 671), but these

---

[12] The Chuidian rule was recently questioned, however, by the Seventh Circuit Court of Appeals in two cases, Ye v. Zemin, 383 F.3d 620 (7th Cir. 2004) and Enahoro v. Abubakar, 408 F.3d 877 (7th Cir. 2005). The Executive Branch has never specifically endorsed the Jungquist/Chuidian extension of FSIA immunity to individuals, but recognizes that such an analysis is binding on this Court.

are issues over which the courts are divided.  See, e.g., Doe v. Qi, 349 F. Supp. 2d 1258 (N.D.

Cal. 2004) (concluding that the FSIA did not bar action against lower level Chinese officials

accused of human rights violations against Falun Gong practitioners, but that the act of state

doctrine barred all but declaratory relief; Doe, 400 F. Supp. 2d at 104 (holding that the doctrines

barred claims against Israeli officials for actions taken to further policy of the Israeli state in the

West Bank and Gaza strip; Enahoro, 408 F.3d at 877; Xuncax v. Gramajo, 886 F. Supp. 162 (D.

Mass. 1995) (former Guatemalan military official did not have FSIA immunity for actions

beyond the scope of his authority for claimed human rights abuses).  See also Hilao v. Marcos,

25 F.3d 1467 (9th Cir. 1994); Trajano v. Marcos, 978 F.2d 493, 498 n.10 (9th Cir. 1992); cf.

Kadic v. Karadzic, 70 F.3d 232 (2d Cir. 1996); Filartiga v. Pena-Irala, 630 F.2d 876 (2d. Cir.

1980).  See also S. Rep. No. 102-249, at *8, Nov. 26, 1993.

 Therefore, and in view of the compelling arguments for dismissal of the complaint

advanced in Sections I and II above, the United States respectfully suggests that the Court not

reach the FSIA and act of state issues, neither of which is essential to the proper disposition of

this case.

## CONCLUSION

 For the foregoing reasons, the United States asks that this action be dismissed.

Dated: July 24, 2006     Respectfully submitted,

         PETER D. KEISLER
         Assistant Attorney General

         KENNETH L. WAINSTEIN
         United States Attorney

         JOSEPH H. HUNT
         Director, Federal Programs Branch

VINCENT M. GARVEY
Deputy Director, Federal Programs Branch

ALEXANDER K. HAAS (CA Bar 220932)
Trial Attorney, U.S. Dep't of Justice
Civil Division, Federal Programs Br.
20 Massachusetts Ave., NW, Rm. 7328
Washington, D.C. 20530
Tel.  202-307-3937    Fax.  202-616-8470
alexander.haas@usdoj.gov
Attorneys for the United States of America