UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LI WEIXUM, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 04-0649 (RJL) |
| ) | |
| BO XILIA, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION
(August __1__, 2008)

Before the Court are a Suggestion of Immunity and Statement of Interest filed by the United States, who is not a party in this matter. For the following reasons, the Court finds that Bo Xilia, the former Minister of Commerce for the People's Republic of China ("PRC"), is immune from service of process and is thus not subject to this Court's jurisdiction. This case is therefore DISMISSED.

## FACTS

Plaintiffs, practitioners of the Falun Gong spiritual movement[1] in the PRC, brought this suit against Bo Xilai for human rights abuses that allegedly occurred while he served

---

[1] The Court accepts plaintiffs' allegations as true for present purposes. The Court also notes that the United States intervened below only to assert Minister Bo's immunity and has not taken issue with the veracity of the claims of plaintiffs. In its brief, the United States notes that the government has informed the PRC "of its strong opposition to violations of the basic human rights of Falun Gong practitioners in China" and cites State Department reports that condemn the types of practices alleged by plaintiffs. *See* Suggestion of Immunity and Statement of Interest of the United States ("Statement of Interest") at 2.

1

as governor of Liaoning Province from 2001 to 2004.[2] At the time this suit was brought, Minister Bo was serving as the Minister of Commerce of the PRC, a cabinet-level position with responsibility for the PRC's relations with foreign states on commercial and international trade matters.[3] Plaintiffs assert their claims pursuant to the Alien Tort Claims Act ("ATCA") and the Torture Victims Protection Act ("TVPA"). 28 U.S.C. § 1350; 28 U.S.C. § 1350 note.

On April 22, 2004, plaintiffs served a summons and complaint on Minister Bo while he was in Washington, D.C. pursuant to an invitation from the United States to participate in an annual meeting of the U.S.-China Joint Commission on Commerce and Trade. At the time, Minister Bo was a member of Chinese Vice Premier Wu Yi's official diplomatic delegation. The purported service was made in the midst of a U.S.-PRC Business Council reception honoring Vice Premier Wu and her delegation. *See* Letter from the Legal Advisor to Assistant Attorney General, Civil Division, Peter D. Keisler, dated July 24, 2006, attached to Statement of Interest as Att. 1. Neither Minister Bo, nor the PRC on his behalf, ever responded.

On February 4, 2005, plaintiffs moved for declaratory and default judgments against Minister Bo. On September 27, 2005, this Court denied both. Shortly thereafter, I forwarded a letter to the Department of State seeking its views on the applicability of

---

[2] Plaintiffs do not allege that Minister Bo personally engaged in human rights violations, but instead focus on Minister Bo's supervision of Chinese government personnel in the Liao Ning Province who allegedly persecuted and abused Falun Gong members. *See, e.g.*, Compl. ¶¶ 7, 16.

[3] As of 2007, the defendant no longer served as a minister in the Chinese government. His departure from government service has no relevance on this analysis; the only issue before this Court is whether Minister Bo was immune from service at the time service was attempted.

various doctrines to the jurisdiction of this Court to hear plaintiffs' case. On July 24, 2006, the United States submitted a Suggestion of Immunity and Statement of Interest pursuant to 28 U.S.C. § 517, asking this Court to find that Minister Bo, as a member of a special diplomatic mission, is immune from service of process and therefore not subject to this Court's jurisdiction. For the following reasons, the Court agrees.

## ANALYSIS

Nearly 200 years ago, in *Schooner Exchange v. McFaddon*, 11 U.S. (7 Cranch) 116 (1812), the Supreme Court recognized the importance of the immunity of foreign sovereigns and their officials from suits brought in United States courts. Chief Justice Marshall, no less, explained that although "the jurisdiction of the United States over persons and property within its territory 'is susceptible of no limitation not imposed by itself,' . . . . [A]s a matter of comity, members of the international community had implicitly agreed to waive the exercise of jurisdiction over other sovereigns in certain classes of cases, such as those involving foreign ministers or the person of the sovereign." *Republic of Austria v. Altmann*, 541 U.S. 677, 688 (2004) (quoting *McFaddon*, 11 U.S. at 136).

This doctrine derives, of course, from the President's powers to conduct foreign affairs and receive foreign ministers. *See* U.S. Const. art. II, § 3 (assigning to the President the authority to "receive Ambassadors and other public Ministers"); *see also United States v. Benner*, 24 F. Cas. 1084, 1086 (C.C.E.D. Pa. 1830) (No. 14,568). Indeed, until the passage of the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602, *et seq.*, ("FSIA") in 1976, the Executive Branch alone determined whether a foreign nation

was entitled to immunity. *See, e.g., Ye v. Zemin*, 383 F.3d 620, 625 (7th Cir. 2004). And as the Supreme Court in *Ex parte Republic of Peru* held, "the Executive Branch's suggestion of immunity is conclusive and not subject to judicial inquiry." *Ye*, 383 F.3d at 625 (citing *Ex parte Republic of Peru*, 318 U.S. 578, 589 (1943)); *see also Carrerra v. Carrera*, 174 F.2d 496, 497 (D.C. Cir. 1949). The passage of the FSIA, however, changed that analysis. How so?

The FSIA effectively transfers "the responsibility for case-by-case application of [immunity] principles from the Executive Branch to the Judicial Branch" as it relates to the immunity of foreign states. *United States v. Noriega*, 117 F.3d 1206, 1212 (11th Cir. 1997). It is silent, however, regarding whether individual foreign *officials* are immune from suit. *First Am. Corp. v. Al-Nahyan*, 948 F. Supp. 1107, 1119 (D.D.C. 1996) (finding that the "enactment of the FSIA was not intended to affect the power of the State Department, on behalf of the President as Chief Executive, to assert immunity for heads of state or for diplomatic and consular personnel"). Not surprisingly, perhaps, courts have found that immunity for individual foreign officials continues to be governed by the pre-FSIA framework. *See, e.g., Ye*, 383 F.3d at 625 ("Because the FSIA does not apply to heads of states, the decision concerning the immunity of foreign heads of states remains vested where it was prior to 1976 – with the Executive Branch."); *Noriega*, 117 F.3d at 1212 ("Because the FSIA addresses neither head-of-state immunity, nor foreign sovereign immunity in the criminal context, head-of-state immunity could attach in cases, such as this one, only pursuant to the principles and procedures" that existed prior to the enactment of the FSIA.). And a numbers of courts have even concluded that a suggestion

of immunity by the Executive Branch on behalf of a head of state or diplomatic agent is binding upon the federal courts and must be accepted as conclusive. *See, e.g., Ye*, 383 F.3d at 625-26; *First Am. Corp.*, 948 F. Supp. at 1119 (citing *Ex parte Republic of Peru*, 318 U.S. at 589); *Spacil v. Crowe*, 489 F.2d 614, 617 (5th Cir. 1974); *Lafontant v. Aristide*, 844 F. Supp. 128, 137 (E.D.N.Y. 1994); *Abdulaziz v. Metro. Dade County*, 741 F.2d 1328, 1331 (11th Cir. 1984); *Carrera*, 174 F.2d at 497. I agree.

The logic that underlies deference to the Executive's assertion regarding a head of state or diplomatic agent is, in this Court's view, equally applicable to a foreign minister who is part of a special diplomatic mission.[4] Indeed, the Executive's authority to assert such immunity derives from customary international law and the President's powers to conduct foreign affairs and receive foreign ministers. Restatement (Third) of Foreign Relations Law § 464, cmt. i. ("High officials of a foreign state and their staffs on an official visit or in transit . . . enjoy immunities like those of diplomatic agents when the effect of exercising jurisdiction against the individual would be to violate the immunity of the foreign state."); U.S. Const. art. II, § 3. Thus, it is not surprising that other courts who have considered the Executive's assertion of immunity when the individual was neither a head of state nor a member of a diplomatic mission have deferred to the Executive. *See Kilroy v. Windsor*, Civ. No. C-78-291, slip op. at *2 (N.D. Ohio Dec. 7, 1978) (adopting

---

[4] Plaintiff cites two cases that are inapposite in this context, *United States v. Kostadinov*, 734 F.2d 905 (2d Cir. 1984), and *United States v. Sissoko*, 995 F. Supp. 1469 (S.D. Fla. 1997). In neither of these cases did the Executive Branch expressly assert the existence of a special mission to the United States and suggest immunity as a result. *Sissoko*, 995 F. Supp. at 147; *Kostadinov*, 734 F.2d at 911-13. These cases are irrelevant to this Court's analysis because the Executive has explicitly asserted that Minister Bo is covered by special mission immunity.

the Department of State's suggestion that Prince Charles was on a "special diplomatic mission" and dismissed the claims against him because of his immunity); *see also Tachiona v. Mugabe*, 169 F. Supp. 2d 259, 296-97 (S.D.N.Y. 2001) (dismissing case against a foreign minister under head of state doctrine for lack of personal jurisdiction pursuant to a suggestion of immunity by Department of State); *Republic of Philippines v. Marcos*, 665 F. Supp. 793, 799 (N.D. Cal. 1987) (dismissing case where the Department of State asserted diplomatic immunity on behalf of a senior foreign official).

Here, the Department of State has concluded that during the course of his official visit as part of the PRC's formal delegation, Minister Bo functioned "as an official diplomatic envoy of the PRC." Statement of Interest at 4. Moreover, the Legal Advisor of the Department of State considers the visit of Minister Bo in April 2004 to have been a "special diplomatic mission to the United States that rendered Minister Bo immune from service of process." *Id.* According due deference to the Executive Branch, the Court will therefore defer to the Executive's determination that Minister Bo was immune from service of process for the duration of the special diplomatic mission. As a result, any service of process upon Minister Bo was legally void.

Finally, I would note that this Court's deference to the Executive Branch's suggestion of immunity is also influenced by the longstanding reluctance of the Judicial Branch to intrude into the conduct of foreign affairs, a matter exclusively vested in the Executive Branch by our Founding Fathers. *Mexico v. Hoffman*, 324 U.S. 30, 35 (1945) ("[I]t is a guiding principle in determining whether a court should exercise or surrender its jurisdiction in [immunity] cases, that the courts should not so act as to embarrass the

executive arm in its conduct of foreign affairs. 'In such cases the judicial department of this government follows the action of the political branch, and will not embarrass the latter by assuming an antagonistic jurisdiction.'") (quoting *United States v. Lee*, 106 U.S. 196, 209 (1882)); *Ye*, 383 F.3d at 626-27; *Spacil*, 489 F.2d at 619 ("Separation-of-powers principles impel a reluctance in the judiciary to interfere with or embarrass the executive in its constitutional role as the nation's primary organ of international policy."). To say the least, the decision to immunize a foreign official can have significant ramifications for this country's relationship with other foreign nations.

In this case, the Department of State has indicated that this "suit has interfered with the President's ability to conduct foreign relations with China and will likely continue to do so." *See* Statement of Interest at 12. Indeed, in a letter to Attorney General Gonzales concerning this case, PRC Minister of Justice Wu Aiying stated: "The US side should be fully aware that China-US relations, especially the economic and trade ties as well as cooperation between the relevant government departments and exchange of visits, will be adversely affected . . . ." Statement of Interest at 15. To say the least, the judiciary is not well-situated to assess the implications and competing concerns that the Executive Branch must balance when providing immunity to a foreign official. *Spacil*, 489 F.2d at 619 ("[T]he degree to which granting or denying a claim of immunity may be important to foreign policy is a question on which the judiciary is particularly ill-equipped to second-guess the executive. The executive's institutional resources and expertise in foreign affairs far outstrip those of the judiciary."). Simply put, interfering in such foreign affairs matters implicates basic constitutional separation of powers principles

upon which this Court is unwilling to tread. Accordingly, for all of the foregoing reasons, the Court DISMISSES this case for lack of jurisdiction.

/s/ Richard J. Leon
RICHARD J. LEON
United States District Judge